

## In The United States District Court
## For The Northern District of Illinois
### Eastern Division

|  |  |
|---|---|
| ISI International, Inc. | : |
| *Plaintiff,* | : |
| vs. | : |
| Borden Ladner Gervias, LLP, | : |
| *Defendant.* | : |

Civil Action No.  98 C 7614

**Judge Conlon**

JURY TRIAL DEMANDED

## NOTICE OF FILING OF PLAINTIFF'S
## FIRST AMENDED AND VERIFIEDCOMPLAINT

**TO**: Defendant, Borden, Ladner Gervias, LLP, and its attorneys of Record:

**PLEASE TAKE NOTICE** that, Pursuant to Rule 15(a) Fed.R.Civ.P., Plaintiff, ISI International, Inc., has filed with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, its First Amended and Verified Complaint in the above designated case, this 4th day of September, 2001, a copy of which is attached hereto.

Respectfully Submitted

David A. Crossman

DATED: September 4, 2001

In The United States District Court
For The Northern District of Illinois
Eastern Division

|  |  |  |
|---|---|---|
| ISI International, Inc., an Illinois corporation, | : | |
| *Plaintiff,* | : | Civil Action No. 98 C 7614 |
| vs. | : | |
| Borden Ladner Gervias, a partnership, successor to Scott & Aylen | : | **Judge Conlon** |
| *Defendant.* | : | JURY TRIAL DEMANDED |



# PLAINTIFF'S FIRST AMENDED
# AND VERIFIED COMPLAINT

For its First Amended And Verified Complaint against Defendant, Borden Ladner Gervias, substituted by Order of the United States Court of Appeals for the Seventh Circuit for the originally named defendant, Scott & Aylen, Plaintiff, ISI International, Inc., alleges as follows:

## I.   THE PARTIES. JURISDICTION AND VENUE

1.     ISI International, Inc. (hereinafter "ISI") is an Illinois corporation with a principal place of business at 72 Treasure Lane, Riverwoods, Illinois, which was incorporated on January 6, 1996.

2.     On information and belief, the originally named defendant, Scott & Aylen (hereinafter "S&A") was an Ontario partnership engaged in, *inter allia*, the practice of law.

3.     On information and belief, in or about June of 1999, S&A merged with another Ontario partnership, Borden & Elliot (hereinafter "B&E") to form a new Ontario partnership, Borden Elliot Scott & Aylen (hereinafter "BES&A").

1

4.      On information and belief, as of the merger of S&A with B&E to form BES&A, S&A ceased to exist as a separate entity, but the former partners thereof remain individually liable on the claims by ISI against S&A in this action.

5.      On information and belief, BES&A assumed liability for the claims by ISI against S&A in this action.

6.      On information and belief, on or about March 1, 2000, BES&A merged with several other partnerships in Canada to form a new partnership, Borden Ladner Gervais, (hereinafter "BLG")

7.      On information and belief, as of the merger of BES&A with said other Canadian partnerships to form "BLG", BES&A ceased to exist as a separate entity, but the former partners thereof remain individually liable on the claims by ISI against S&A in this action.

8.      On information and belief, BLG assumed liability for the claims by ISI against S&A in this action.

9.      The United States Court of Appeals having concluded that "Scott & Aylen no longer exists" and that BLG is the successor to S&A, by an Order of that Court, BLG has been substituted in this action in lieu of the prior named defendant. S&A.

10.      This Court has original subject matter jurisdiction over claims of this Complaint pursuant to 28 USC § 1331, 15 USC § 1125 (a) (1)(B) and 28 U.S.C. § 1331 by reason of the fact that this is an action between a citizen of the State of Illinois and a Canada partnership and the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and pursuant to 28 U.S.C. §1332. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 by reason of the fact that this action arises under the Laws of The United States, more specifically the Federal Lanham Act, 15 U.S.C. § 1051 et seq., over which This Court has

exclusive jurisdiction pursuant to 15 U.S.C. § 1121.  This Court has supplemental jurisdiction over the other claims in this Complaint pursuant to 28 U.S.C. § 1367 (a) by reason of the fact that said other claims are so related to the claims over which This Court has Original Jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution

11.    Venue is proper in the United States District Court for the Northern District of Illinois, Eastern Division, pursuant to 28 U.S.C. § 1391 (d), and, the United States Court of Appeals for the Seventh Circuit has already determined in appeal No. 99-1815, This Court has personal jurisdiction over the Defendant pursuant to Rule 4K2 Fed.R.Civ.P.,   In the alternative, personal jurisdiction exists over the Defendant pursuant to the Illinois Long Arm Statute.

## II.  BACKGROUND FACTS

12.    On information and belief, Dr. Bert Reitsma (hereinafter "Dr. Reitsma") is a Dutch citizen residing in Canada, who was  an officer, director and employee of ISI from the time of its formation in January 1996 until the end of November 1996, when he resigned as an officer, director and employee of ISI.

13.    Shortly after ISI was formed, it acquired all of the stock in ISI Innovative Surgical Instruments (Canada) Ltd. (hereinafter "ISI Canada") an Ontario corporation which had previously been wholly owned by Reitsma, in exchange for which, Dr. Reitsma was issued shares in ISI.

14.    On information and belief, ISI Canada had been formed by S&A for Dr. Reitsma in or about 1994, and from the time of its formation up to the time when ISI Canada was acquired by ISI,

3

S&A had been representing ISI Canada.

15. On information and belief, from the time of its formation up to at least the time when ISI Canada was acquired by ISI, an attorney client and fiduciary relationship existed between S&A and ISI Canada, by reason of which S&A owed ISI Canada a professional and fiduciary duty to act in the best interests of ISI Canada with respect to, *inter alia*, those matters for which S&A had been retained by ISI Canada.

16. After acquiring ISI Canada, ISI informed S&A that it was terminating S&A's representation of ISI Canada and requested that S&A forward its files relating to its representation of ISI Canada's corporate affairs to Roberts & McGivney, the Chicago law firm which was handling the corporate affairs for ISI.

17. S&A Agreed to forward its files relating to its representation of ISI Canada's corporate affairs, conditioned upon the agreement of ISI to pay all of its prior invoices for services which it had rendered and disbursements which it had incurred on behalf of ISI Canada.

18. ISI agreed to pay, and did pay, all of the prior invoices from S&A to ISI Canada, and S&A forwarded its corporate files relating to ISI Canada to Roberts & McGivney.

19. On information and belief, in addition to representing the corporate affairs of ISI Canada, S&A had also prepared and, was prosecuting at that time, an application for a patent in the United States Patent and Trademark Office, Serial No. 08/402,936 (hereinafter the "First Patent Application"), for a surgical wound drainage device which had been invented by Dr. Reitsma (hereinafter "Reitsma's First Invention").

20. S&A's billings for the work which it had previously undertaken with respect to that First Patent Application were included among the invoices which S&A requested that ISI pay

4

before S&A would forward its files to Roberts & McGivney.

21.    Reitsma's First Invention, however, proved to be impractical, and after acquiring ISI Canada, ISI Instructed S&A to abandon that First Patent Application.

22.    In lieu of that First Patent Application, ISI requested that S&A prepare and file, on its behalf, a new "continuation in part" application (hereinafter the "C-I-P Application") for a new and improved surgical wound drainage device (hereinafter the "CombiVac Product") which had been developed jointly by Dr. Reitsma and Jokari/US, Inc. (hereinafter "Jokari").

23.    Pursuant to an earlier agreement between Jokari and Dr. Reitsma (hereinafter the "Jokari/Reitsma Agreement"), all patents relating to the CombiVac Product were to be owned exclusively by ISI's wholly owned subsidiary, ISI Canada.

24.    S&A agreed to assume the direct representation of ISI, in lieu of its prior representation of ISI Canada, with respect to the preparation, filing and prosecution of the C-I-P Application, and requested that ISI pay it a retainer for the services which it would be rendering with respect to the preparation, filing and prosecution of the C-I-P Application for ISI.

25.    Thus, in addition to paying the prior outstanding invoices from S&A to ISI Canada, ISI also paid the retainer which S&A had requested as a precondition to undertaking the direct representation of ISI with respect to the preparation, filing and prosecution of the C-I-P Application.

26.    On information and belief, thereafter, S&A assigned ISI a new client designation, 3115, to distinguish the services which it was rendering for ISI and the disbursements which it was incurring on ISI's behalf.

27.    Thereafter, S&A forwarded to ISI its outstanding invoices for services rendered on behalf of

5

ISI Canada, together with a new invoice for work being undertaken by S&A directly for ISI with respect to its preparation, filing and prosecution of the C-I-P Application for ISI, specifically distinguishing them as being "all invoices to ISI Canada and to you ISI International."

28. On information and belief, pursuant to its agreement with ISI, S&A prepared the C-I-P Application for the CombiVac Product, and caused it to be filed in the United States Patent and Trademark office by its corresponding law firm in the United States in or about April 1996, naming Dr. Reitsma as the inventor of the CombiVac Product.

29. However, due to the differences in currency rates, ISI's payment of S&A's prior invoices to ISI Canada and S&A's retainer resulted in an overpayment, which was retained by S&A until late 1998.

30. When ISI discovered this overpayment in 1998, its president telephoned S&A's accounting department to inquire about this matter.

31. At that time, S&A's accounting department confirmed to over the telephone to ISI's president that there had been an overpayment which was being retained by S&A in anticipation of further legal services to be rendered for ISI, and S&A's accounting department also confirmed that, at that time, ISI was still listed in the records as being a client in good standing with that firm.

32. Thereafter, at ISI's request, S&A refunded the overpayment which it claimed to have been holding, up to that time, on account for ISI.

33. On information and belief, from at least as early as May 1996 and until at least the time when S&A refunded the monies which it had been retaining on account for ISI, an attorney-client relationship and a fiduciary relationship existed between ISI and S&A, by reason of which,

S&A owed ISI a professional and fiduciary duty to represent the interests of ISI with respect

to, *inter alia*, those matters for which ISI had retained S&A.

34. In or about late November 1996, Dr. Reitsma resigned as an officer, director and employee

of ISI.

35. When he resigned, Dr. Reitsma was under a contractual obligation, pursuant to the terms of

the Jokari/Reitsma Agreement, to assign his rights in the C-I-P Application to ISI's wholly

owned subsidiary, ISI Canada.

36. However, when he resigned, Dr. Reitsma refused to assign his rights in the C-I-P Application

either to ISI or to its wholly owned subsidiary, ISI Canada.

37. Later, in separate litigation between ISI and Reitsma, the United States District Court for the

Northern District of Illinois entered a declaratory judgment that ISI, and not Reitsma, was the

legal owner of the C-I-P Application.

38. When Dr. Reitsma resigned from ISI and refused to assign his rights in the C-I-P Application,

either to ISI or to ISI Canada, ISI's corporate counsel, Ms. Catherine McGivney of the

Chicago law firm of Roberts & McGivney (hereinafter "Ms. McGivney"), wrote to S&A

requesting them to forward to her office all of S&A's files relating to the C-I-P Application

in order for her to arrange for an intellectual property law firm in Chicago to take over the

prosecution of that application.

39. In response to Ms. McGivney's request, S&A wrote back, refusing to forward the files as she

had requested, even though ISI had paid all invoices submitted to it as of that time for all

work undertaken by S&A with respect to the C-I-P Application.

40. On information and belief, after refusing to forward its files relating to the C-I-P Application,

7

and without notice to ISI, S&A intentionally allowed the C-I-P Application, and all foreign applications which could have been based upon the C-I-P Application, to go abandoned.

41.    In addition to refusing to forward their files relating to the C-I-P Application (and later abandoning that application and any applications for foreign patent rights which might have been based upon it), S&A wrote and sent a letter (hereinafter the "APP Letter") to American Pharmaceutical Partners (hereinafter "APP"), Santa Monica California, and wrote and sent and forwarded letters (hereinafter the "Medimade Letters") to Medimade, B.V. (hereinafter "Medimade") in The Netherlands.

42.    When S&A wrote and sent the APP Letter to APP, and the Medimade Letters to Medimade, ISI was in the process of negotiating manufacturing, marketing and distribution contracts for its CombiVac Product with APP and Medimade.

43.    On information and belief, when it wrote and sent the APP Letter and the Medimade Letters, S&A knew that ISI was in the process of negotiating manufacturing, marketing and distribution contracts with APP and Medimade for ISI's CombiVac Product.

44.    On information and belief, S&A's intention in sending the APP Letter and the Medimade Letters was to cause APP and Medimade to terminate their negotiations with ISI and to possibly cause APP and Medimade to enter into negotiations with Dr. Reitsma regarding the manufacturing, marketing and distribution of the CombiVac Product.

45.    In the APP Letter, S&A represented that Dr. Reitsma had a patent for the CombiVac Product, even though Dr. Reitsma did not then have, and never did have at any time thereafter, a patent for the CombiVac Product.

46.    In the APP Letter, S&A represented that ISI had no legal rights with respect to the

8

CombiVac Product and that any patents which might issue with respect thereto, even though pursuant to the Jokari/Reitsma Agreement all patents relating to the CombiVac product were to be owned exclusively by ISI's wholly owned subsidiary, ISI Canada, not by Dr. Reitsma.

47. In the APP Letter, S&A represented that if APP continued its negotiations with ISI and entered into a business relationship with ISI relating to the manufacture, marketing and/or distribution of the CombiVac Product, APP would be infringing an issued patent owned by Reitsma.

48. The representations by S&A, as enumerated in numbered paragraphs 45, 46 and 47 above, were false.

49. On information and belief, when it sent the APP Letter, S&A knew that no patent had ever issued to Dr. Reitsma for the CombiVac Product.

50. On information and belief, when it sent the APP Letter, S&A knew that, pursuant to the Jokari/Reitsma Agreement, any and all patents relating to the CombiVac Product were to be owned, not by Dr. Reitsma, but rather were to be owned exclusively by ISI's wholly owned subsidiary, ISI Canada.

51. On information and belief, when it sent the APP Letter, S&A knew that there could be no infringement of a patent in the United States until and unless a patent actually issues, and S&A had specifically advised Dr. Reitsma of that fact.

52. The APP Letter was not a single letter in which the forgoing false representations were made by S&A, but rather was only one of a series of similar letters which were prepared and sent by S&A to parties with whom ISI was then involved in business transactions relating to the manufacture, marketing and distribution of the CombiVac Product, including, *inter alia*, the

9

Medimade Letters.

53.    In the Medimade Letters, S&A represented that Dr. Reitsma had a patent for the CombiVac Product, even though Dr. Reitsma did not then have, and never did have at any time thereafter, a patent for the CombiVac Product.

54.    In the Medimade Letter, S&A represented that ISI had no legal rights with respect to the CombiVac Product and any patents which might issue with respect thereto, even though pursuant to the Jokari/Reitsma Agreement all patents relating to the CombiVac product were to be owned exclusively by ISI's wholly owned subsidiary, ISI Canada, not by Dr. Reitsma.

55.    In the Medimade Letters, S&A represented that if Medimade continued its negotiations with ISI and entered into a business relationship with ISI relating to the manufacture, marketing and/or distribution of the CombiVac Product, Medimade would be infringing an issued patent owned by Reitsma.

56.    The representations by S&A, as enumerated in numbered paragraphs 53, 54 and 55 above, were false.

57.    On information and belief, when it sent the Medimade Letters, S&A knew that no patent had ever issued to Dr. Reitsma for the CombiVac Product.

58.    On information and belief, when it sent the Medimade Letters, S&A knew that, pursuant to the Jokari/Reitsma Agreement, any and all patents relating to the CombiVac Product were to be owned, not by Dr. Reitsma, but rather were to be owned exclusively by ISI's wholly owned subsidiary, ISI Canada.

59.    On information and belief, when it sent the Medimade Letters, no patent had issued to Dr. Reitsma for the CombiVac Product anywhere in the world, and Dr. Reitsma did not even have

an application for a patent for the Combivac Product on file with the Patent Office of The Netherlands.

60.     When S&A wrote and sent the APP Letter and the Medimade Letters, ISI had the reasonable expectation that its negotiations with APP and Medimade would result in extremely valuable contracts with those companies for the manufacture, marketing and/o distribution of the CombiVac Product.

61.     ISI's ongoing negotiations with APP and Medimade, when S&A sent the APP Letter and the Medimade Letters, represented extremely valuable prospective business and economic advantages which ISI had the reasonable prospect of enjoying.

62.     As a direct consequences of the APP Letter and the Medimade Letters, and the false representations made by S&A in those letters, APP and Medimade terminated their negotiations with ISI for the manufacture, marketing and distribution of the CombiVac Product in the United States and in the Netherlands, thereby depriving ISI of its anticipated contractual relations with those companies and the extremely valuable prospective business and economic advantages which ISI had the reasonable prospect of enjoying at that time.

63.     As a direct consequences of S&A's refusal to forward its files relating to the C-I-P Application, and S&A's abandonment of the C-I-P Application, and any and all foreign patent applications which might have been based upon that C-I-P Application pursuant to the Patent Co-Operation Treaty, ISI has lost valuable intellectual property rights relating to its CombiVac Product.

64.     On information and belief, when S&A sent the APP Letter and the Medimade Letters, S&A was not aware of any litigation which was pending anywhere in the world on behalf of

11

Reitsma, and no litigation was pending anywhere in the world on behalf of Reitsma which related to the subject matter in the APP Letter and the Medimade Letters, and S&A was not aware of any litigation for patent infringement which could have been filed anywhere on behalf of Reitsma when the APP Letter and the Medimade Letters were sent.

## COUNT I

### Federal Lanham Act Violations

65.     For Count I of its complaint against Defendant, ISI realleges and incorporates herein by reference Numbered Paragraphs 1 through 64 of its Complaint.

66.     The representations in the APP Letter constitute false representations in violation of ISI's rights under Section 43(a) of the Federal Lanham Act.

67.     By reason of S&A's false representations in its APP Letter in violation of Section 43(a) of the Federal Lanham Act, ISI has been damaged in an amount not presently calculated, but believed to be not less than $ 50,000,000.00 (FIFTY MILLION DOLLARS, US).

68.     S&A's false representations in its APP Letter were made intentionally, willfully, wantonly, maliciously and in reckless disregard of ISI's rights, all for the purpose of injuring ISI and ISI's business, by reason of which this case is an exceptional case under the provisions of that Act, whereby ISI is entitled to have the award of its actual damages increased three times to an amount believed to be not less than $150,000,000.00 (ONE HUNDRED AND FIFTY MILLION DOLLARS).

## COUNT II

### Common Law Unfair Competition Trade Disparagement, Trade Defamation and Slander of Title

12

69. For Count II of its complaint against Defendant, ISI realleges and incorporates herein by reference Numbered Paragraphs 1 through 68 of its Complaint.

70. The representations in the APP Letter constitute trade disparagement, trade defamation and/or slander of title in violation of ISI's rights at common law.

71. By reason of S&A's false representations in its APP Letter in violation of ISI's rights at common law, ISI has been damaged in an amount not presently calculated, but believed to be not less than $ 50,000,000.00 (FIFTY MILLION DOLLARS, US).

72. Defendant's false representations in its APP Letter were made intentionally, willfully, wantonly, maliciously and in reckless disregard of ISI's rights all for the purpose of injuring ISI and ISI's business, by reason of which, in addition to treble damages under the Federal Lanham Act, ISI is entitled to recover punitive damages in such amount as may be determined by the jury to be proper.

## COUNT III

### Common Law Tortious Interference With ISI's Contractual Relations and/or Prospective Business And Economic Advantages

73. For Count III of its complaint against Defendant, ISI realleges and incorporates herein by reference Numbered Paragraphs 1 through 72 of its Complaint.

74. The representations in the APP Letter and in the Medimade Letters constitute tortious interference by S&A with ISI's contractual relations and/or ISI's prospective business and economic advantages.

75. By reason of S&A's false representations in its APP Letter and in its Medimade Letters in violation of ISI's rights at common law, ISI has been damaged in an amount not presently

13

calculated, but believed to be not less than $ 100,000,000.00 (ONE HUNDRED MILLION DOLLARS).

76.     S&A's false representations in its APP Letter and in its Medimade Letters were made intentionally, willfully, wantonly, maliciously and in reckless disregard of ISI's rights, all for the purpose of injuring ISI and ISI business, by reason of which ISI is entitled to recover punitive damages in such amount as may be determined by the jury to be proper.

## COUNT IV

### Professional Malpractice and Breach of Fiduciary Duty

77.     For Count IV of its complaint against Defendant, ISI realleges and incorporates herein by reference Numbered Paragraphs 1 through 76 of its Complaint.

78.     S&A's APP Letter and S&A's Medimade Letters, and the representations made therein to the recipients of those letters, and S&A's refusal to turn over its files relating to the C-I-P Application, and S&A's subsequent abandonment, without notice to ISI, of the C-I-P Application and any and all foreign patents which might have been based upon that C-I-P Application constitute professional malpractice by S&A and/or a breach of S&A's fiduciary duty to ISI.

79.     By reason of S&A's professional malpractice and breach of its fiduciary duty, ISI has been injured an amount not presently calculated, but believed to be not less than $200,000,000.00 (TWO HUNDRED MILLION DOLLARS, US).

80.     S&A's acts of professional malpractice and breach of its fiduciary duty to ISI were undertaken by S&A intentionally, willfully, wantonly, maliciously and in reckless disregard of ISI's rights and S&A's professional and fiduciary duty to ISI, all for the purpose of injuring

14

ISI and ISI's business, by reason of which ISI is entitled to recover punitive damages in such amount as may be determined by the jury to be proper.

**WHEREFOR, UPON ITS COMPLAINT, PLAINTIFF PRAYS FOR JUDGMENT AS FOLLOWS:**

A.    Upon Count I of its complaint, that it be ordered and adjudged:

    (1)    That the representations in Scott & Aylen's letter to APP constitute false representations in violation of ISI's rights under Section 43(a) of the Federal Lanham Act.

    (2)    That ISI be awarded its damages as a consequence thereof.

    (3)    That the false representations in Scott & Aylen's letter to APP were made intentionally, willfully, wantonly, maliciously and in reckless disregard of ISI's rights, all for the purpose of injuring ISI and ISI's business, by reason of which, this case is an exceptional case under the provisions of that Act, whereby ISI is entitled to have the award of its damages increased by three times.

    (4)    That ISI be awarded its attorney's fees in this matter, pursuant to the Federal Lanham Act.

B.    Upon Count II of its complaint, that it be ordered and adjudged:

    (1)    That the representations in Scott & Aylen's letter to APP  constitute trade disparagement, trade defamation and/or slander of title in violation of ISI's rights at common law.

    (2)    That ISI be awarded its damages as a consequence thereof.

    (3)    That the false representations in Scott & Aylen's letter to APP were made

15

intentionally, willfully, wantonly, maliciously and in reckless disregard of ISI's rights, all for the purpose of injuring ISI and ISI's business, by reason of which. ISI is entitled to recover punitive damages in addition to the actual damages which it has suffered by reason of Scott & Aylen's letter to APP.

C.    Upon Count III of its complaint, that it be ordered and adjudged:

    (1)    That the representations in Scott & Aylen's letters to APP and to Medimade constitute tortious interference with ISI's contractual relations and/or prospective business and economic advantages.

    (2)    That ISI be awarded its damages in consequence thereof.

    (3)    That Scott & Aylen's false representations in its letters to APP and to Medimade were made intentionally, willfully, wantonly, maliciously and in reckless disregard of ISI's rights all for the purpose of injuring ISI and ISI's business, by reason of which ISI is entitled to recover punitive damages in addition to the actual damages which it has suffered by reason of Scott & Aylen's letters to APP and to Medimade.

D.    Upon Count IV of its complaint, that it be ordered and adjudged:

    (1)    That Scott & Aylen's letters to APP and to Medimade, and/or the representations made therein to the recipients of those letters, and/or Scott & Aylen's refusal to turn over its files relating to the C-I-P Application, and/or Scott & Aylen's subsequent abandonment, without notice to ISI, of the C-I-P Application and any and all foreign patents which might have been based upon that C-I-P Application constitute professional malpractice by Scott & Aylen and/or a breach of Scott & Aylen's fiduciary duty to ISI.

16

(2)  That ISI be awarded its damages as a consequence thereof.

(3)  That Scott & Aylen's acts of professional malpractice and breach of its fiduciary duty to ISI were undertaken by Scott & Aylen intentionally, willfully, wantonly, maliciously and in reckless disregard of ISI's rights, all for the purpose of injuring ISI and ISI's business, by reason of which, ISI is entitled to recover punitive damages in addition to the actual damages which it has suffered as a consequence thereof.

E.  That it be ordered and adjudged:

(1)  That the individual partners of Scott & Aylen are jointly and severally liable with Scott & Aylen for any and all damages awarded ISI upon Counts I, II, III, and/or IV of this Complaint, including, without exception, any punitive damages which are determined by the jury to be proper.

(2)  That the partnership of Borden Elliot Scott & Aylen assumed liability for the claims of ISI against Scott & Aylen, and is liable for any and all damages awarded ISI upon Counts I, II, III, and/or IV of this complaint, including, without exception any punitive damages which are determined by the jury to be proper.

(3)  That the individual former partners of Borden Elliot Scott & Aylen are jointly and severally libable, with Scott & Aylen and the former partners of Scott & Aylen for any and all damages awarded ISI upon Counts I, II, III, and/or IV of this complaint, including, without exception, any punitive damages which are determined by the jury to be proper.

(4)  That the partnership of Borden Ladner Gervais assumed liability for the claims of ISI against Scott & Aylen, via its assumption of the liabilities of Borden Elliot Scott &

17

Aylen, and is liable for any and all damages awarded ISI upon Counts I, II, III, and/or IV of this complaint, including, without exception any punitive damages which are determined by the jury to be proper.

(5)   That the individual partners of Borden Ladner Gervais are jointly and severally liable with Borden Ladner Gervais, Borden Elliot Scott & Aylen, Scott & Aylen and the former partners of Borden Elliot Scott & Aylen and Scott & Aylen for any and all damages awarded ISI upon Counts I, II, III, and/or IV of this complaint, including, without exception, any punitive damages which are determined by the jury to be proper.

F.   That ISI be awarded its costs of this Action.

G.   That ISI be awarded such further relief as This Court determines to be just and equitable.

Dated: August 31, 2001

Respectfully Submitted,

David A. Crossman, Esq.
Direct Fax:     (773) 248 5750
Direct Phone   (773) 248 1530
Law Offices Of David A. Crossman
433 Briar Place, Suite 11 C
Chicago, Illinois 60657

## DEMAND FOR JURY TRIAL

ISI, ISI International, Inc., by and through its attorney of record, David A. Crossman, Esq. hereby renews its demand for a trial by jury upon its forgoing First Amended Complaint.

ISI International, Inc.

David A. Crossman, Esq.
Dated: August 31, 2001

18

## VERIFICATION

I, Johannes A. Aschman, being duly sworn, do herewith affirm and declare that I am president of the Plaintiff in this civil action, ISI International, Inc., that I have read and reviewed the forgoing **"PLAINTIFF'S FIRST AMENDED AND VERIFIED COMPLAINT"** and I do herewith affirm and verify that the facts alleged therein as being true are, to my own personal knowledge, true, and that those facts which are alleged, on information and belief as being true, are, to the best of my information, knowledge and belief, true.



DATED: _Aug 31 – 2001_

Johannes A. Aschman, President
ISI International, Inc.

## NOTARY

On this 31st day of August 2001, Mr. Johannes A. Aschman personally appeared before me, and after being properly identified to me and having been duly sworn, did execute the forgoing verification as his own intentional act as president of ISI International, Inc. on behalf of ISI International, Inc.

_Herbert Taylor_

NOTARY PUBLIC

My Commission Expires 3·8·03

DATED: _8·31·01_

OFFICIAL SEAL
HERBERT TAYLOR
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 3-8-2003

Subscribed and sworn to before me
31st Day of August 20 01
Chicago, County of Cook, State of Illinois
_Herbert Taylor_
Notary Public

## CERTIFICATE OF SERVICE

I, David A. Crossman, attorney for ISI International, Inc., Plaintiff in the above case, hereby certify that a copy of the Notice of Filing of Plaintiff's First Amended and Verified Complaint and Plaintiff's First Amended and Verified Complaint, were served on Defendant, Borden Ladner Gervais on September 4, 2001 by hand delivery to its attorneys of Record, Mayer Brown & Platt at 190 South LaSalle Street, Chicago, Illinois 60603, marked to the attention of Lee N. Abrams, Esq., and an additional courtesy copy thereof was delivered on September 4, 2001 by hand delivery to its attorneys Altheimer & Gray, 10 South Wacker Drive, Chicago, Illinois 60604-7482, marked to the attention of Jeffrey DeJong, Esq.

DATED: _September 4, 2001_

David A. Crossman